**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**WILEY ZACHARY CARROLL**                                                    **PLAINTIFF**

**VS.**                             **CIVIL ACTION NO. 4:05CV53-TSL-LRA**

**A. ANDERSON, ET AL**                                           **DEFENDANTS**

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the undersigned for recommendations to Judge Lee on the Motions to Enforce Settlement[1] filed by Plaintiff Wiley Zachary Carroll.[2]

Carroll and Defendants, Officers Anthony Anderson and Eddie Nicholson, settled this closed case in February 2008. The complaint was filed in March 2005 when Carroll was housed in the custody of the Mississippi Department of Corrections [MDOC] at the East Mississippi Correctional Facility [EMCF]. He sued Defendants at that time for failing to protect him from another inmate, Maurice Acker. The basis for his suit was that Acker attacked him in his sleep in January 2005. Carroll contended that Acker had previously attacked two other inmates and that Defendants were aware of these attacks.

A settlement was reached by the parties prior to trial, and an Agreed Judgment was entered by Judge Lee on February 19, 2008.[3] Carroll signed a release which

---

[1] ECF Nos. 87 & 91.

[2] By Order [ECF No. 88], Judge Lee referred the motion [ECF No. 87] to the undersigned for report and recommendation. Defendants filed a response to the motions [ECF No. 92], with accompanying exhibits, and Plaintiff filed two other pleadings [ECF No. 89 & 93]. All of these pleadings and exhibits have been considered by the undersigned.

[3] ECF No. 86.

provided: upon a payment of a sum certain, and "the assistance by The GEO Group, Inc. in obtaining a transfer of Mr. Carroll from the East Mississippi Correctional Facility within a period of 2 weeks from February 14, 2008," Carroll releases all claims "relative to his incarceration in EMCF as of March 18, 2005." The agreement also provided that Carroll would receive $950. The release was not signed by Defendants.[4]

The issue is whether the settlement provision should be interpreted as barring these Defendants, or MDOC, from ever again housing Carroll in EMCF.[5] The parties all agree that Carroll was transferred from EMCF within days of the settlement to the Marshall County Correctional Facility (MCCF). He remained housed there until transferred to Parchman in November 2008 due to numerous misconduct incidences at MCCF.[6]

Initially Plaintiff was housed in Unit 29 at Parchman. After even more misconduct incidents, including being found guilty of possessing a shank, he was reclassified to "administrative long-term segregation"[7] and moved to Unit 32 in January 2010.[8]

---

[4] The Court has not been provided with any settlement document other than the release; no document signed by these Defendants, or any MDOC official, has been filed. Defendants have not raised the issue of whether or not this Court has the authority to enforce the settlement as against MDOC.

[5] "[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994).

[6] "Drill Down Detail Report" dated 8/23/2010, ECF No. 92-1.

[7] This was formerly known as "D Custody" or "Maximum Custody."

[8] ECF No. 92-2.

Unit 32 was closed following protracted litigation soon after Plaintiff's transfer there in early 2010. As part of the closure, MDOC had to identify other long-term segregation units in the state within which to transfer the administrative long-term segregation inmates from Unit 32. One of those units was established at the EMCF in an addition constructed during 2007-2008. On April 19, 2010, MDOC transferred inmate Carroll from Unit 32 to EMCF where he was housed on Unit 5 in administrative long-term segregation. No party alleges that these Defendants had any personal involvement in his transfer, and it is questionable as to whether they could have prevented his transfer.

Defendants attached to their response a copy of Carroll's "Male Inmate Reclassification Score Sheet."[9] They explain that a score of 11 points or more means an inmate will be assigned in close confinement— and inmate Carroll scored 18. Defendants also attach Carroll's "Review & Assessment for Release from Administrative Segregation Status."[10] It reveals that Carroll received 32 Rule Violation Reports [RVRs] just during 2010. His RVR history report[11] is also attached; it contains ten pages of listings of the RVRs Carroll has received during his MDOC incarceration.

Defendants explain that Carroll's medical level of care of "C" indicates that he needs ongoing mental-health treatment. Unlike other MDOC facilities, they contend that EMCF has an active mental-health treatment program. Defendants stress that Carroll's classification as an administrative long-term segregation inmate and his "C" medical level

---

[9] This document is dated July 30, 2010, ECF No. 92-3.

[10] This document is dated May 18, 2010, ECF No. 92-4.

[11] ECF No. 92-5.

of care are the only reasons Carroll was transferred to EMCF— not for punitive reasons relating to his lawsuit.

Inmate Maurice Acker is no longer in the MDOC system.  For that reason, he no longer poses any threat to Wilson.  According to Defendants, the settlement agreement did not provide that MDOC could never transfer Carroll back to MDOC.  He was transferred, in good faith, from EMCF, and remained elsewhere for over two years.  His own poor behavior caused his classification change, and Defendants contend that this change resulted in his transfer to EMCF.

Carroll claims that all parties were aware that Plaintiff was never to be returned to EMCF under the agreement.  He asserts that defense counsel Mr. Thaggard told him that he did not have to worry; he would never be back at EMCF.  Plaintiff now contends that the conditions at EMCF are deplorable, and he lists several examples of inmates not being properly attended when a medical crisis occurred.  He does not rebut any of the facts regarding his conduct history.  His primary assertion is that he settled the case on the basis that he would not be returned to EMCF, and that he cannot remain at EMCF.

The undersigned has considered the assertions made by all of the parties, mindful that "[p]ublic policy requires the courts to encourage the voluntary settlement of civil controversies." *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 45 (D.Md. 1974); *see also Ramirez v. General Motors Corp.*, 1999 WL 1336087, *2 (S.D. Tex. Dec. 10, 1999) ("There is little question that courts have strong interest in encouraging the expeditious settlement of private disputes.")

The Court also is guided by Mississippi law's provision that "[c]ourts will not rewrite [settlement agreements] to satisfy the desires of either party." *Chantey Music Publishing, Inc. v. Malaco, Inc.*, 915 So.2d 1052, 1056 (Miss. 2005). The agreement contains no term for the transfer, and we cannot insert a term or conclude that the transfer was indefinite. Only a reasonable construction may be made.

Defendants' construction is reasonable. They immediately transferred Plaintiff in accordance with their agreement and attempted to house Plaintiff both at MCCF and at Parchman. After two years, Plaintiff's own behavior caused him to be placed in administrative long-term segregation, making him ineligible for many MDOC facilities.

Carroll's original Complaint was based on his fear for his safety due to Defendants' failure to protect him from Inmate Aker. Aker is no longer a threat, and Carroll has not alleged that he is being threatened. Plaintiff has filed another lawsuit, 4:10cv129-HTW-LRA, and his new complaints regarding the conditions at EMCF may be considered in those proceedings. The current conditions of his confinement are not relevant to the lawsuit filed in 2005, as that suit was based on Aker's attack.

The undersigned is also mindful of the law regarding inmate custodial classifications. "Inmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), *abrogated on other grounds by Booth v. Churner,* 532 U.S. 732, 735 (2001). Of course, the State may enter into settlement agreements

with an inmate regarding housing and custodial classification, as was done here. But these agreements should not be read as perpetual unless such terms are clearly written.[12] If Carroll's classification had not been changed due to his behavior, and he had still been transferred back to EMCF, the undersigned would be more apt to consider his claim that a breach had occurred.

Under the circumstances in Carroll's case, the undersigned finds that these Defendants substantially complied with the settlement agreement, as reasonably construed, and no further enforcement should be ordered. Carroll's Motions to Enforce [ECF Nos. 87 & 91] should be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996). **Plaintiff shall file any objections to this Report and Recommendation on or before October 29, 2010.**

THIS the 12th day of October, 2010.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

---

[12] The undersigned is uncertain as to whether a settlement agreement containing a "forever" provision regarding housing could even be enforced— certainly not as to these individual Defendants.